# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Chase Manhattan Mortgage Corp.,      :
                                     :
　　　　Appellant,                    :      Case No. 2:06-cv-00026
                                     :
v.                                   :      Judge Michael H. Watson
                                     :
Paul Allen Tudor, et al.,            :
                                     :
　　　　Appellees.                    :

_____

## BRIEF OF APPELLANT CHASE HOME FINANCE LLC, SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION
_____

Kenneth C. Johnson　　(0022021)
Justin W. Ristau　　(0075222)
Rachel Ary Mulchaey　　(0073669)
Vladimir P. Belo　　(0071334)
BRICKER & ECKLER LLP
100 S. Third Street
Columbus, Ohio 43215
Telephone: 614/227-2300
Fax:  614/227-2390
kjohnson@bricker.com
jristau@bricker.com
rmulchaey@bricker.com
vbelo@bricker.com
Co-counsel for Chase Home Finance LLC,
successor by merger to Chase Manhattan
Mortgage Corporation

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

I.      INTRODUCTION ............................................................................... 1

II.     STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ................... 2

III.    STATEMENT OF THE ISSUES PRESENTED ...................................... 2

IV.   STATEMENT OF THE STANDARD OF APPELLATE REVIEW .................... 3

V.     STATEMENT OF THE CASE .............................................................. 4

       A.     Procedural posture .................................................................. 4

       B.     Statement of Facts .................................................................. 5

VI.   ARGUMENT ................................................................................... 7

       A.     Summary Of Chase's Argument On Appeal. ................................ 7

       B.     This Court Must Predict How The Ohio Supreme Court Would Rule On The Question Of State Law Presented In This Case. ................... 9

       *C.*     *Miller v. Kyle* Is Not Squarely On Point And Should Not Have Been Relied Upon By The Bankruptcy Court. ........................... 10

       D.     Absent An Ohio Supreme Court Or Appellate Court Decision Regarding The Recovery Of Attorneys' Fees In The Context of a Chapter 13 Cure, This Court Must Look To The Available Authority To Predict How The Ohio Supreme Court Would Rule On This Issue. ......................................................................... 12

             1.     The Second Appellate District's decision in Washington *Mutual Bank v. Mahaffey* demonstrates that attorneys' fees may be recovered as a condition to contractual reinstatement. ................................................................ 13

             2.     This Court's decision in *Davidson v. Weltman, Weinberg & Reis* endorsed the rationale of *Mahaffey* in the context of a contractual reinstatement. ........................................... 15

E.     Based on the available relevant authority and guiding principles underlying the development of Ohio's public policy, the Ohio Supreme Court would rule that Ohio law does not prohibit the recovery of attorneys' fees in a Chapter 13 cure......................................16

    1.    For the same reasons that attorneys' fees are permitted in a contractual reinstatement, the Ohio Supreme Court would find that Chase is not prohibited from recovering the Fees in this case..................................................................................18

    2.    Ohio's Public Policy does not Prohibit Chase from Recovery of the Fees in the Context of Debtor's Chapter 13 Cure........................................................................................20

        a.    The Allowance of Attorneys Fees in a Chapter 13 Cure Does Not Encourage Litigation................................20

        b.    Chapter 13 Cure is a Mutually Beneficial Remedy. ..........21

        c.    It is reasonable to require Debtors to repay the Fees incurred in enforcing the Mortgage, as a condition of the cure under Chapter 13.............................................22

F.     The Bankruptcy Court Cases Relied Upon By Judge Hoffman In His Opinion Are Not Persuasive Because Each Incorrectly Applied *Miller V. Kyle* In The Context Of A Chapter 13 Cure..............................25

    1.    The Northern District Bankruptcy Court's decision in *In re Lake* improperly expanded the scope of *Miller* and failed to follow the standard set forth by the Sixth Circuit for interpreting state law....................................................................25

    2.    The Bankruptcy Appellate Panel also failed to follow the standard for interpreting state law and incorrectly broadened the Ohio Supreme Court's ruling in *Miller*. ................27

    3.    The Bankruptcy Court's rationale in *In re Landrum* is flawed in finding that attorney fee provision in a note and mortgage are void based on the syllabus rule of law in *Miller v. Kyle.* ..............................................................................29

VII.    CONCLUSION....................................................................................30

CERTIFICATE OF SERVICE ..........................................................................32

1497838v4

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Blount v. Smith*, 12 Ohio St.2d 41 (1967) .................................................................. 17

*Davidson v. Weltman, Weinberg & Reis*, 285 F.Supp. 2d 1093 (S.D. Ohio 2003) ................... passim

*Diggs v. Pepsi-Cola Metropolitan Bottling Co.*, 861 F.2d 914 (6th Cir. 1988) .......................... 10

*First Capital Corp. v. G & J Indust., Inc.*, 131 Ohio App. 3d 106 (8th App. Dist. 1999)............. 28

*Goldfarb v. The Robb Report, Inc.*, 101 Ohio App. 3d 134.......................................................... 16

*In re Armor*, No. 5:98-CV-932-BR-3, 1999 U.S. Dist. LEXIS 5885 (E.D.N.C. Mar. 15, 1999) ........................................................................................................................................ 2

*In re Caldwell*, 851 F.2d 852 (6th Cir. 1988) ............................................................................... 3

*In re Lake*, 245 B.R. 282 (Bankr. N.D. Ohio 2000)............................................................ passim

*In re Landrum*, 267 B.R. 577 (S.D. Ohio 2001) ............................................................ 25, 29, 30

*In re Petroff*, 2001 Bankr. LEXIS 1594 (6th Cir. BAP 2001) ......................................... 25, 27, 29

*Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir. 1987)............................................................ 9

*Leavans v. Ohio Nat'l Bank*, 50 Ohio St. 591 (1893) ................................................................. 27

*Matulin v. Village of Lodi*, 862 F.2d 609 (6th Cir. 1988) ....................................................... 9, 10

*Miller v. Kyle*, 85 Ohio St. 186 (1911) ............................................................................... passim

*New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213 (S.D. Ohio 2001)........ 28

*Nottingdale Homeowners' Assn., supra*, 32 Ohio St.3d 32................................................ 16, 17, 28

*Ohio Cas. Group of Ins. Cos. v. Professional Ins. Mgmt. (In re Professional Ins. Mgmt.)*, 130 F.3d 1122 (3d Cir. 1997)........................................................................................... 10

*Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24  (2nd Cir. 1982) ............................................ 22, 23

*The CIT Group/Equipment Financing, Inc. v. New GIFL, Inc.*, 823 F. Supp. 479 (N.D. Ohio 1993) .............................................................................................................. passim

*Washington Mutual Bank v. Mahaffey*, 154 Ohio App.3d 44, 796 N.E.2d 39 (2003)............. passim

*Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238.......................................................... passim

**Statutes**

11 U.S.C. §1322 ............................................................................................. 29

11 U.S.C. §1322(b) ........................................................................................ 21

11 U.S.C. §1322(b)(5) ............................................................................ passim

11 U.S.C. §1322(e) ................................................................................. passim

11 U.S.C. §362 ............................................................................................... 21

11 U.S.C. §501 ............................................................................................... 21

11 U.S.C. §502 ............................................................................................... 21

11 U.S.C. §554 ............................................................................................... 11

28 U.S.C. §158 (a)(1) ...................................................................................... 2

R.C. 1301.21 ................................................................................................... 28

**Regulations**

24 CFR §203.608 ........................................................................................... 23

38 CFR §36.4308(h) ...................................................................................... 23

1497838v4

## I.      INTRODUCTION

Chapter 13 of the Bankruptcy Code allows a debtor to "cure" a default under a long-term debt obligation "within a reasonable time" and in an amount that is "in accordance with the underlying agreement and applicable nonbankruptcy law."   11 U.S.C. §§ 1322(b)(5) and 1322(e).  In this case, Debtors Paul A. Tudor and Phyllis J. Tudor ("Debtors") invoked this statutory option as part of their Chapter 13 plan and proposed to cure the default under their mortgage loan from Appellant Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation ("Chase").  This case presents the unsettled issue of whether a creditor's attorneys' fees may be recovered as part of the amount necessary to cure a long-term debt default under a Chapter 13 plan.

Chase filed a proof of claim in the Chapter 13 case asserting the amount of Debtors' default, commonly called the "arrearage."  Chase included in the amount of the arrearage the attorneys' fees and costs it had incurred in connection with the pre-bankruptcy foreclosure proceedings and the Chapter 13 case.  In total, Chase sought to recover as part of the claim $1,525.00 in attorneys' fees and costs.  Debtors did not dispute the reasonableness of these amounts, but objected to the claim on the ground that the recovery of fees and costs is prohibited under Ohio common law, which provides the "applicable nonbankruptcy law" controlling the issues in this case.

Relying upon a nearly century-old case, *Miller v. Kyle*, 85 Ohio St. 186 (1911), the bankruptcy court sustained the objection as to the fee component of the claim.  It declared that contractual provisions providing for the recovery of attorneys' fees are void against Ohio public policy absent the applicability of a recognized exception, and found that no exception to the rule applies to a cure under Chapter 13.  In reaching this ruling, the bankruptcy court inappropriately invoked a rule of Ohio law that has no application in the Chapter 13 context.  A reasoned

analysis of *Miller* should have led to the conclusion that the "public policy" concerns identified by the Ohio Supreme Court are not implicated by allowing a creditor to recover its attorneys' fees as part of the amount necessary for the debtor to cure a default.  Because the bankruptcy court engaged in an erroneous interpretation and application of Ohio law, its decision must be reversed.

## II.     STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This appeal arises under the district court's jurisdiction to hear appeals from the final orders, judgments and decrees of the bankruptcy courts. *See* 28 U.S.C. § 158 (a)(1).  In this case, the bankruptcy court issued a final order sustaining the Debtors' objection to the allowance of Chase's attorneys' fees as part of Chase's claim in the Debtors' Chapter 13 proceeding. The bankruptcy court's order is final within the meaning of 28 U.S.C. § 158 (a)(1).  *See e.g. In re Armor*, No. 5:98-CV-932-BR-3, 1999 U.S. Dist. LEXIS 5885 (E.D.N.C. Mar. 15, 1999) (exercising jurisdiction over creditor's appeal from bankruptcy court decision granting debtor's objection to claim).

## III.    STATEMENT OF THE ISSUES PRESENTED

The instant appeal presents the following issues for this Court's determination:

The following issues shall be presented on appeal in this matter:

1.      Are the provisions in the subject loan documents conditioning the Debtors' right to have enforcement of the mortgage discontinued upon the payment by the Debtors of the Appellant's attorney fees incurred as a result of the Debtors' default contrary to Ohio public policy under the rule of *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372 (1911), and thus void or unenforceable under Ohio law?

2

2.     Does Ohio law permit a secured creditor to include reasonable prepetition and/or postpetition attorneys' fees incurred in enforcing a mortgage as part of the amount necessary to cure a default under 11 U.S.C. § 1322(e)?

3.     To the extent Ohio law generally prohibits a secured creditor's rights from collecting attorneys' fees incurred as a result of a debtor's default, does the exception to the general rule recognized by *Davidson v. Weltman, Weinberg & Reis*, 285 F.Supp. 2d 1093 (S.D. Ohio 2003) and *Washington Mutual Bank v. Mahaffey*, 154 Ohio App.3d 44, 796 N.E.2d 39 (2003) allow a secured creditor to include attorneys' fees incurred in enforcing a mortgage as part of the amount necessary to cure a default under 11 U.S.C. § 1322(e)?

4.     To the extent Davidson and *Mahaffey* do not expressly allow a secured creditor to include attorneys' fees incurred in enforcing a secured creditor's mortgage as part of the amount necessary to cure a default under 11 U.S.C. § 1322(e), do the policy considerations addressed in *Davidson* and *Mahaffey* justify an extension of the exception to the general rule recognized in those cases, thereby allowing a secured creditor to include attorneys' fees incurred in enforcing a secured creditor's mortgage as part of the amount necessary to cure a default under 11 U.S.C. § 1322(e)?

## IV.     STATEMENT OF THE STANDARD OF APPELLATE REVIEW

Under Bankruptcy Rule 8013, this Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." The bankruptcy court's findings of fact may not be set aside unless "clearly erroneous." *Id.* The bankruptcy court's conclusions of law, however, are subject to *de novo* review by this Court. *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988).

In this case, the bankruptcy court's Order sustained the Debtors' objection to the allowance of attorneys' fees as part of the amount necessary to cure a default under Chapter 13.

The court's ruling rested upon its interpretation of Ohio law. Accordingly, this Court's standard of review is *de novo*, with no deference granted to the bankruptcy court's legal conclusions.

## V. STATEMENT OF THE CASE

### A. Procedural posture

This matter is before the Court on an appeal from the Order of the United States Bankruptcy Court for the Southern District of Ohio, entered on December 9, 2005, in which the bankruptcy court sustained Debtors' objection to the allowance of certain attorneys' fees that had been incurred by Chase. *See* Order Sustaining in Part and Overruling in Part Objection to Claim (Doc. 1, Ex. 14). In support of this Order, Judge John E. Hoffman, Jr. issued a Memorandum Opinion (the "Opinion") that set forth the court's analysis of Debtors' objection and Chase's response thereto. *See* Memorandum Opinion, (Doc. 1, Ex. 13).

In the Opinion, the bankruptcy court first acknowledged that 11 U.S.C § 1322(b)(5) allows a debtor to cure a default over time. *See id.* at 13-14. The court also recognized that, under 11 U.S.C § 1322(e), the amount necessary to cure a default is to be determined in accordance with the underlying agreement and applicable non-bankruptcy law. *See id.* at 14.

Applying this standard to the facts of the case at bar, the bankruptcy court concluded that there was "no question" that the terms of the underlying agreement provided for the inclusion of reasonable attorneys' fees in the calculation of the amount necessary to cure Debtors' default. *See id.* at 15. However, the court concluded that all contract provisions providing for the recovery of attorney fee provisions are void as a matter of Ohio public policy, absent a recognized exception. *See id.* at 10-11, 25-30. Because the court found that recovery of attorneys' fees in a Chapter 13 cure did not fall exactly within the two exceptions it recognized, the court deemed the recovery of the Fees prohibited by Ohio law. *See id.* at 11, 30-40.

4

1497838v4

Chase brought the instant appeal challenging the bankruptcy court's conclusion that the recovery of attorneys' fees in the context of Debtors' Chapter 13 Plan is prohibited under Ohio law.

**B.     Statement of Facts**

On March 15, 2002, Debtors executed and delivered to Chase a promissory note (the "Note") in the original principal amount of $100,000.00.  *See* Joint Stipulation of Facts, ¶ 1 (Doc. 1, Ex. 9); Note (Doc. 1, Ex. 10, Ex. A).  The Note financed the Debtors' purchase of residential real estate located at 8181 York Road, Pataskala, Ohio 43062 (the "Property").  *See id.*  To secure repayment of the Note, Debtors executed and delivered to Chase a mortgage deed on the Property.  *See* Joint Stipulation of Facts, at ¶ 2; Mortgage (Doc. 1, Ex. 10, Ex. B).  The Mortgage was filed of record in the office of the Licking County Recorder on March 21, 2002.  *See* Joint Stipulation of Facts at ¶ 3.

Following a default by Debtors under the terms of the Note and Mortgage, Chase initiated a judicial foreclosure proceeding in the Court of Common Pleas for Licking County, Ohio, on November 24, 2003.  *See id.* at ¶ 4.  In conjunction with the judicial foreclosure proceeding, Chase expended $350.00 for its preliminary title work, $100.00 for its title update, and $950.00 in attorneys fees.  *See* Proof of Claim of Chase (Doc. 1, Ex. 18).

In response to the foreclosure proceeding, Debtors filed a voluntary bankruptcy petition under Chapter 13 on December 15, 2001.  *See* Joint Stipulation of Facts at ¶ 5.  The Debtors' filing of bankruptcy stayed the judicial foreclosure proceeding under the automatic stay provisions of 11 U.S.C. § 362.  In conjunction with the initial filing of Debtors' Chapter 13 petition, Chase expended $125.00 in attorneys' fees.  *See* Proof of Claim of Chase (Doc. 1, Ex. 18).

Pursuant to the Debtors' proposed plan of reorganization filed in their bankruptcy case, Debtors elected to cure their defaults under the Note and Mortgage pursuant to 11 U.S.C § 1322(b)(5).  *See* Chapter 13 Plan, ¶ 5 (Doc. 1, Ex. 2).  Under 11 U.S.C § 1322(e), the

amount necessary to cure a default (also referred to as the "arrearage") is to be determined in accordance with the underlying agreement and applicable non-bankruptcy law. 11 U.S.C. §§ 1322(b)(5) and 1322(e). In this case, the Mortgage allowed Debtors to cure their default upon the satisfaction of certain conditions. *See* Mortgage, § 19 (Doc. 1, Ex. 10, Ex. B). These conditions are set forth in § 19 of the Mortgage, which provides in relevant part:

> 19. Borrower's Right to Reinstate After Acceleration.
>
> If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those circumstances are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; **(c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument;** and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. … **Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.** …

*Id.* (emphasis added).

To protect its interest in the Property and its rights under the Note and Mortgage, Chase filed a detailed proof of claim, asserting a secured claim[1] in the principal balance of $98,736.98 and claiming an arrearage of $9,230.35 (the "Arrearage Claim"). *See* Proof of Claim of Chase (Doc. 1, Ex. 18). Chase's Arrearage Claim included each of Debtors' missed payments, late charges, foreclosure attorneys' fees, title charges, bankruptcy attorneys' fees, and other various

---

[1] Because Debtors' have stipulated that the value of the Property is $130,000.00, Chase is an oversecured creditor. *See* Joint Stipulation of Facts at ¶ 8.

charges. *See id.* The Mortgage requires payment of each of these fees and costs as a condition to curing a default after acceleration. *See* Mortgage, § 19.

On February 18, 2004, the bankruptcy court confirmed the Debtors' Chapter 13 plan (the "Plan"). *See* Order Confirming Chapter 13 Plan (Doc. 1, Ex. 4). On or about April 28, 2004, Debtors objected to the following categories of Chase's Arrearage Claim:

- Original Title Work: $350.00
- Title Update: $100.00
- Foreclosure Attorneys' Fees: $950.00
- Bankruptcy Attorneys' Fees: $125.00

*See* Debtors' Objection to Claim of Chase (Doc. 1, Ex. 5).

Specifically, Debtors argued that recovery of these various attorneys' fees and title charges (respectively, the "Fees" and "Costs") is prohibited under Ohio law. *See id.* Chase responded that the Fees and Costs were properly included in the calculation of Debtors' arrearage under 11 U.S.C. § 1322(e). *See* Response to Debtors' Objection to Claim of Chase (Doc. 1, Ex. 6).

Debtors have stipulated that each of the Fees and Costs were incurred and expended in enforcing the Note and Mortgage and/or to protect Chase's interest in the Property. *See* Joint Stipulation of Facts at ¶ 7. Debtors also stipulated that the Fees and Costs would not have been incurred but for the Debtors' admitted default under the terms of the Note and Mortgage. *See id.* Finally, Debtors stipulated that the reasonableness, truth, and accuracy of the Fees and Costs were not in dispute. *See id.*

## VI. ARGUMENT

### A. Summary Of Chase's Argument On Appeal.

Because the recovery of the Fees as part of Chase's Arrearage Claim is not prohibited under Ohio law, the bankruptcy court erred in sustaining Debtors' objection to the Fees.

Accordingly, this Court should reverse the bankruptcy court's decision and enter an order overruling Debtors' objection to the allowance of the Fees in this case.

Section 1322(b)(5) of the Bankruptcy Code allows a Chapter 13 debtor to cure defaults on long-term debts as part of the Chapter 13 plan. In turn, § 1322(e) of the Bankruptcy Code guides the determination of the amount necessary to "cure" the default: the statute provides, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e).

In this case, the bankruptcy court correctly concluded that the underlying agreement between the Debtors and Chase provided for Chase's recovery of attorney's fees in the event that the debtors elected to cure their default. *See* Memorandum Opinion, at 15. Chase's ability to recover its attorney's fees as part of the Debtors' Chapter 13 "cure" was therefore dependent upon whether "applicable nonbankruptcy law" allowed such recovery. However, the bankruptcy court concluded that the applicable nonbankruptcy law—Ohio common law—did *not* allow the recovery of attorneys' fees. In reaching this conclusion, the bankruptcy court relied upon *Miller v. Kyle* (1911), 85 Ohio St. 186, for the proposition that "attorney fee provisions in debt instruments are void as against public policy." *Id.* at 26. Accordingly, the bankruptcy court determined that *Miller* was the source of "applicable nonbankruptcy law" and that the common law rule stated by that case prohibited Chase from recovering its attorney's fees as part of the Debtors' Chapter 13 cure.

The bankruptcy court's mode of analysis was flawed and should not be credited by this Court. By identifying *Miller* as the applicable rule of Ohio law, the bankruptcy court relied on the flawed premise that the *Miller* rule extends to the recovery of attorneys' fees in a Chapter 13 cure. In reality, *Miller* has no application to the case at bar, which involves the allowance of

8

attorneys' fees as part of Chase's Arrearage Claim under Debtors' Chapter 13 Plan. Because no Ohio case has addressed the issue before this Court in the instant case, this Court must predict how the Ohio Supreme Court would rule on the issues on this appeal.

In the absence of an Ohio case deciding the enforceability of an attorneys' fee provision in the context of a Chapter 13 cure, this Court must look to analogous cases in order to make an accurate prediction of how the Ohio Supreme Court would rule on this issue. This Court's analysis therefore requires consideration of cases decided in the analogous context of a mortgage reinstatement and of the underlying principles driving the development of Ohio's public policy relating to the enforceability of attorney-fee provisions in contracts. In light of these relevant considerations, this Court should find that Ohio law does *not* prohibit the recovery of attorneys' fees in the context of a Chapter 13 cure, that the bankruptcy court erred in ruling that the recovery of such fees is prohibited under Ohio law, and that the bankruptcy court's decision disallowing the Fees as part of Chase's Arrearage Claim should be reversed.

### B. This Court Must Predict How The Ohio Supreme Court Would Rule On The Question Of State Law Presented In This Case.

Because this case requires a determination of whether Ohio law allows a creditor's recovery of attorneys' fees in connection with a Chapter 13 cure, the threshold issue on appeal requires determination of the proper standard for interpreting state law. When a federal court applies state law, it must follow the precedent of that state's highest court. *See Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987). But when the state supreme court "has not addressed the precise issue" before the federal court, " 'the opinions of intermediate appellate court provide the next best indicia of the state's position.'" *The CIT Group/Equipment Financing, Inc. v. New GIFL, Inc.*, 823 F. Supp. 479, 485 (N.D. Ohio 1993) (applying principle in diversity cases) (quoting *Matulin v. Village of Lodi*, 862 F.2d 609, 616 (6th Cir. 1988));

1497838v4

*see also Ohio Cas. Group of Ins. Cos. v. Professional Ins. Mgmt. (In re Professional Ins. Mgmt.)*, 130 F.3d 1122, 1125 (3d Cir. 1997) (applying same principle in bankruptcy cases in which federal courts apply state law). The intermediate appellate court opinions will be deemed controlling unless "other persuasive factors" convince the federal court that the state supreme court would disagree with the appellate court's determination. *Matulin*, 862 F.2d at 616.

In the event that there is no consensus among the intermediate state appellate courts on the issue considered by the federal court, the federal court must predict how the state supreme court would decide the issue. *The CIT Group*, 823 F. Supp. at 485 (citing *Diggs v. Pepsi-Cola Metropolitan Bottling Co.*, 861 F.2d 914, 929 (6th Cir. 1988) (Merritt, J., concurring in part and dissenting in part).

**C.** *Miller v. Kyle* **Is Not Squarely On Point And Should Not Have Been Relied Upon By The Bankruptcy Court.**

In this case, the bankruptcy court concluded that *Miller v. Kyle* was controlling precedent from the Ohio Supreme Court. In essence, the bankruptcy court concluded that *Miller v. Kyle* stood for the proposition that Ohio law barred a provision in a loan agreement that would render the borrower responsible for the lender's attorney's fees as a condition to "curing" a default under 11 U.S.C. § 1322(b)(5). But this conclusion is flawed as a matter of law. Apart from the fact that the modern Bankruptcy Code allowing for "cure" under Chapter 13 had not yet been enacted in 1911, when *Miller v. Kyle* was decided, the *ratio decidendi* of *Miller* is simply inapplicable when juxtaposed with a Chapter 13 cure.

In *Miller*, the Ohio Supreme Court reaffirmed what was, even then, a longstanding rule of Ohio law. The Court held: "It is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, *if the principal and interest are not paid at maturity*, are contrary to public policy and void." *Miller*, 85 Ohio St. 186, paragraph one of the

10

syllabus (emphasis added). Further explaining the rationale for this "settled" Ohio law, the *Miller* court denounced "such contracts for the payment of counsel fees upon default in payment of a debt" as "contrary to public policy" because of the "obvious tendency of such contracts to encourage suits." *Id.* at 192-93. Accordingly, by its very terms, the Ohio Supreme Court's rule in *Miller* applied only to bar attorney fee-shifting provisions contained in promissory notes and, even then, only when such stipulations were effective upon a default by the borrower. *See Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 242 (observing that *Miller* stands for proposition that Ohio public policy "forbids contracts for the payment of counsel fees upon default in payment of a debt obligation").

The situation in the case at bar is not the same as the one to which the longstanding rule from *Miller v. Kyle* applies. The case before this Court does *not* arise out of Debtors' "default" of the Note or the Mortgage in the sense that *Miller v. Kyle* contemplated. Whereas *Miller v. Kyle* involved a creditor seeking to recover its attorneys' fees as part of the judgment awarded in a suit upon a note and mortgage, the case at bar involves the Debtors' avoidance of a potential judgment in the creditor's favor through their choice to file a Chapter 13 petition and invoke the cure provisions of 11 U.S.C. § 1322(b)(5).

Importantly, Chapter 13 does not require a debtor to cure a default under § 1322(b)(5). Rather, a debtor has the option of curing its default or surrendering the property pursuant to 11 U.S.C. § 554. Accordingly, although the Debtors elected to cure their default under § 1322(b)(5), they were under no obligation to do so in this case. *See* Debtors' Chapter 13 Plan, (Doc. 1, Ex. 2). This election by the Debtors materially distinguishes this case from *Miller v. Kyle*, in which the contract at issue forced the debtor to pay the creditor's attorneys' fees as a penalty for the default and as part of the judgment obtained by the creditor in a suit to enforce the note and

mortgage. In this case, however, the Fees became payable not as a penalty upon the debtor but as a condition of the Debtors' election to cure their defaults over time, as allowed by § 1322(b)(5). Therefore, the obligation to pay the Fees was not triggered upon default of the Note or Mortgage.

Accordingly, the bankruptcy court erred in treating *Miller* as the applicable Ohio Supreme Court precedent upon which to judge the enforceability of Chase's contractual provision requiring the Debtors to pay Chase's attorney's fees as part of the costs associated with a Chapter 13 cure. Because *Miller* did not "address the precise issue before the court," *The CIT Group*, 823 F. Supp. at 485, the bankruptcy court should have looked to the opinions of Ohio intermediate appellate courts to ascertain the best indicia of the probable course the Ohio Supreme Court would chart if faced with the issue posed in this appeal. In failing to undertake the correct analysis of Ohio law, the bankruptcy court erroneously applied *Miller v. Kyle* where it does not belong.

> **D.    Absent An Ohio Supreme Court Or Appellate Court Decision Regarding The Recovery Of Attorneys' Fees In The Context of a Chapter 13 Cure, This Court Must Look To The Available Authority To Predict How The Ohio Supreme Court Would Rule On This Issue.**

If the bankruptcy court had employed the correct analysis of Ohio law, it would have found no case in which the Ohio Supreme Court had tested the enforceability of a contractual attorney-fee shifting provision allowing the creditor to recoup its attorney's fees as part of the debtor's costs to cure a default as part of a Chapter 13 plan. Not only is there no Ohio Supreme Court precedent governing the issue, Chase's research further reveals no case from an intermediate Ohio court of appeals deciding whether such an attorney-fee provision is valid and enforceable under Ohio law. Thus, this Court must predict how the Ohio Supreme Court would rule on this question of law.

12

Notwithstanding this apparent vacuum of Ohio common law governing the precise issue on this appeal, there are at least two persuasive cases that militate in favor of the validity of an attorney-fee shifting provision in the context of a Chapter 13 cure.  And because both of these cases arose in contexts that are more analogous to the situation in this case than was the Ohio Supreme Court's 1911 decision in *Miller*, the bankruptcy court should have found them to be the better predictor of whether the Ohio Supreme Court would allow the recovery of attorneys' fees in a Chapter 13 cure.

> **1.     The Second Appellate District's decision in Washington *Mutual Bank v. Mahaffey* demonstrates that attorneys' fees may be recovered as a condition to contractual reinstatement.**

As noted previously, a decision of an Ohio intermediate appellate court is persuasive authority for a federal court trying to predict how this state's highest court would decide the issue at hand.  *The CIT Group*, 823 F. Supp. at 485.  In the present case, *Washington Mutual Bank v. Mahaffey*, 154 Ohio App.3d 44 (2003), provides support for the proposition that Chase may recover, pursuant to its contract with the Debtors, its prepetition and/or postpetition attorney's fees as a condition of the Debtors' Chapter 13 cure.

In *Mahaffey*, Washington Mutual Bank (the lender) commenced a foreclosure action in the Montgomery County (Ohio) Court of Common Pleas after the borrower became delinquent on mortgage payments.  While the action was pending, the borrower attempted to invoke his contractual right, contained within the mortgage documents, to reinstate the mortgage upon payment of the arrearage owed to the Bank.  The contract, however, called for the borrower to pay the Bank's attorney's fees as a condition of the reinstatement.  Accordingly, when the borrower requested a reinstatement figure from the Bank, the Bank included as part of the

13

amount its attorneys' fees incurred in the foreclosure action.  154 Ohio App.3d at 51, ¶ 38.[2]
Apparently deterred by the obligation to pay attorney's fees, the borrower declined to invoke his
contractual right to reinstatement.

After the Bank won summary judgment in the trial court, the borrower appealed to the
Second District Court of Appeals, arguing that the Bank had "breached" its own obligations
under the mortgage by including an attorney fee provision in the contractual clause governing
reinstatement of the mortgage.  In other words, the borrower argued that the Bank could not,
consistent with Ohio public policy, condition a reinstatement of the mortgage upon the
borrower's payment of the Bank's attorney's fees incurred in initiating the foreclosure action.
Invoking "a number of Ohio cases," the borrower argued that the attorney-fee provision was
"against public policy and void."  154 Ohio App.3d at 51, ¶ 38.

The Second District rejected the borrower's arguments and found the Bank's attorney-fee
provision valid and enforceable under Ohio law.  Finding the cases cited by the borrower to be
"distinguishable," the court of appeals emphasized the fact that the borrower's obligation to pay
attorney's fees "is not provided in the mortgage instrument in this case as an obligation upon
foreclosure, but as a condition of reinstatement of the loan."  *Id.* at 51-52, ¶ 39.  In this context,
the requirement to pay attorney's fees was therefore *not* an obligation arising "in connection with
the enforcement of a contract of indebtedness."  *Id.* at 52, ¶ 40.  The payment of attorney's fees
was merely the consequence of the borrower's choice to reinstate the mortgage loan under the
terms of the contract.  The court therefore saw "nothing against public policy" in the attorney-fee

---

[2] The contractual provision at issue in *Mahaffey* stated: "Borrower has a right to be reinstated if Lender has required
immediate payment in full because of the Borrower's failure to pay any amount due under the Note or this Security
Instrument.  This right applies even after foreclosure proceedings are instituted.  Borrower shall tender in a lump
sum all amounts required to bring Borrower's account current, including, to the extent they are obligations of
Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and
expenses properly associated with the foreclosure proceedings."  *Mahaffey*, 154 Ohio App.3d at 51, ¶ 37.

14

provision; to the contrary, the court found it "reasonable that the mortgagee should require, as a condition of abandoning the foreclosure action and reinstating the loan, that it recover its attorneys fees in the foreclosure action that it is abandoning." *Id.* at 52, ¶ 39.

In reaching its well-reasoned holding, the *Mahaffey* court did not simply apply *Miller* and its progeny in rote fashion. Rather, the Second District examined the rationale underlying the *Miller* interpretation of Ohio "public policy." And because of the nature of a contractual mortgage reinstatement, which preserves the contractual relationship between borrower and lender, the court found *Miller* and its progeny to be distinguishable and the rule cited therein to be inapplicable. Thus, *Mahaffey* stands for the sound proposition that the lender may require the borrower to pay, as a condition of reinstating the mortgage, the lender's attorney's fees incurred prior to reinstatement without running afoul of the *Miller* "public policy." In the context of reinstatement, the attorney's fees are *not* imposed, as a matter of Ohio law, as a penalty for the borrower's "default," which is the precise evil that *Miller* and its progeny found to be against public policy.

      **2.**     **This Court's decision in *Davidson v. Weltman, Weinberg & Reis* endorsed the rationale of *Mahaffey* in the context of a contractual reinstatement.**

The significance of the *Mahaffey* court's analysis is further underscored by Judge Rice's decision in *Davidson v. Weltman, Weinberg & Reis*, 285 F. Supp. 2d 1093 (S.D. Ohio 2003), which involved the same question decided by *Mahaffey*. In upholding a contractual provision requiring the borrower's payment of the lender's attorney's fees as a condition of reinstating the mortgage, Judge Rice rejected the argument that an attorney fee provision is "always void" when included within a debt instrument. *Id.* After undertaking a thorough analysis of *Miller* and its progeny, as well as a number of cases that either distinguished *Miller* or carved exceptions out of its rule, Judge Rice concluded that the Second District Court of Appeals' analysis in *Mahaffey*

15

was the better one. *Id.* at 1102-03. Observing that "*Miller* and its progeny were concerned with attorney's fees constituting a penalty against the debtor upon default or breach of the contract," Judge Rice found (just as the court in *Mahaffey*) that the requirement of attorney's fees as a condition of reinstatement does *not* truly arise in connection with a "default." *Id.* at 1103. Because the debtor is not obligated to pay attorney's fees unless the debtor has *elected* the contractual right of reinstatement, the public policy concern of *Miller* is not implicated. *Id.* Thus, even assuming the continued vitality of *Miller* as a matter of Ohio law, contractual reinstatement is simply one of the many instances in which an agreement to pay attorney's fees is *not* void according to "public policy."[3]

> **E.** **Based on the available relevant authority and guiding principles underlying the development of Ohio's public policy, the Ohio Supreme Court would rule that Ohio law does not prohibit the recovery of attorneys' fees in a Chapter 13 cure.**

Because neither the Ohio Supreme Court nor the Ohio appellate courts have considered the specific issue of whether the recovery of attorneys' fees through a Chapter 13 cure is prohibited under Ohio law, this Court must predict how the Ohio Supreme Court would decide this issue now on appeal. In so doing, this Court should evaluate cases addressing the analogous situation of a contractual reinstatement and how those courts have addressed and applied the public-policy considerations behind the enforceability of contractual attorney-fee provisions.

*Mahaffey* and *Davidson* undertake a reasoned approach to the scope of *Miller v. Kyle* and the specific context in which Ohio policy counsels against the enforceability of attorney-fee

---

[3] Judge Rice recognized that *Miller*'s continued vitality had been undermined by a line of Ohio cases that had upheld contractual provisions requiring one party to pay the other's attorney's fees. *See e.g. Worth v. Aetna Cas. & Surety Co.*, 32 Ohio St.3d 238 (1987) (finding *Miller* inapplicable to indemnification agreement); *Nottingdale Homeowners' Assn.*, *supra*, 32 Ohio St.3d 32 (distinguishing *Miller* and finding it inapplicable to a "noncommercial" contract between condominium association and condominium owner); *Goldfarb v. The Robb Report, Inc.*, 101 Ohio App. 3d 134 (attorney fee provision in commercial franchise agreement enforceable). While also recognizing that another line of cases continued to apply *Miller* in voiding attorney-fee provisions contained in note or mortgage, Judge Rice ultimately determined that *Mahaffey* provided the more persuasive reasoning when considering the context of a contractual reinstatement.

16

provisions.  Analyzing the development of Ohio law in the area of contractual attorney-fee provisions, *Mahaffey* and *Davidson* correctly conclude that the public policy concerns identified in *Miller v. Kyle* do not apply when the contractual provision at issue provides for the creditor's recovery of attorney fees upon the debtor's *reinstatement* of the mortgage obligation.

The *Mahaffey* and *Davidson* analyses of Ohio public policy in the context of a contractual reinstatement also apply in the context of a Chapter 13 cure.  Just like none of the *Miller v. Kyle* public policy concerns apply when a debtor must pay the creditor's attorneys' fees as a condition of the debtor's election to reinstatement the mortgage, Ohio public policy is not offended by the allowance of attorney-fee recovery by the creditor upon the debtor's election to invoke the statutory cure provision in Chapter 13.  Because of this inherent similarity between reinstatement and cure, the Ohio Supreme Court would likely find the *Mahaffey* and *Davidson* decisions to be persuasive authority and find that the recovery of attorneys' fees in a statutory cure is not contrary to public policy and therefore not prohibited by Ohio law.  Absent a public policy reason for invalidating a contractual provision, the Ohio Supreme Court would likely invoke Ohio's policy upholding the fundamental right to contract without government restraint. *See Nottingdale Homeowners Assn.*, 33 Ohio St.3d at 36, citing *Blount v. Smith*, 12 Ohio St.2d 41, 47 (1967).

Simply put, the guiding principles that have driven the development of Ohio's public policy with respect to attorney-fee shifting agreements suggest that the recovery of attorneys' fees is permitted as a condition to Chapter 13 cure.  Accordingly, this Court should find that Ohio law does not prohibit the recovery of the Fees in this case.  The decision of the bankruptcy court should be reversed.

1. **For the same reasons that attorneys' fees are permitted in a contractual reinstatement, the Ohio Supreme Court would find that Chase is not prohibited from recovering the Fees in this case.**

Notwithstanding the persuasive force of the reasoning employed in *Mahaffey* and *Davidson,* the bankruptcy court found the cases inapplicable to the instant case, for the simple reason that contractual reinstatement is distinct from Chapter 13 cure.  *See* Memorandum Opinion, 37 (Doc. 1, Ex. 13).  Indeed, the bankruptcy court went to great lengths to distinguish Chapter 13 cure from contractual reinstatement, emphasizing such differences as the borrower's payment obligations and the time limits associated with payment of arrearages.  *See id.* at 34-40. The bankruptcy court also made much of the fact that there is no case in which a Chapter 13 cure was considered the functional equivalent of contractual reinstatement.  *See id.* at 37.

While the bankruptcy court committed nearly six pages of its decision to a discussion of the economic distinctions between reinstatement and cure, the court's decision did not suggest why the allowance of attorneys' fees in a Chapter 13 cure would violate Ohio law.  *See id.* at 34-40. Rather, the bankruptcy court based its holding on the faulty premise that *Miller* established a general rule that all attorney fee provisions are void against public policy, absent a recognized exception.  *See id.* at 25-30.   Because the bankruptcy court found that a statutory cure is not exactly identical to contractual reinstatement, the court held that recovery of fees in a Chapter 13 cure does not fall directly within what it characterized as the "reinstatement exception" to *Miller*. *See id.* at 40.   As a result, the bankruptcy court concluded that *Mahaffey* and *Davidson* could not provide a basis to allow recovery of the Fees in this case.  *See id.*

Chase readily acknowledges that the instant case is not directly on point with *Mahaffey* and *Davidson*.  However, the fact that cure and reinstatement are not identical does not lead to the automatic conclusion that *Mahaffey* and *Davidson* provide no basis for allowing the recovery of the Fees in this case.  While reinstatement and cure are economically distinct, the concepts are

18

similar in all relevant respects when examining whether the public policy concerns of *Miller v. Kyle* are implicated. As noted previously, *both* reinstatement and cure result from an election by the debtor to pay arrearages and essentially continue the contractual relationship with the creditor on a voluntary, prospective basis. Neither contractual reinstatement nor Chapter 13 cure involve a fee provision that is actually triggered by a "default" in the sense that the Ohio Supreme Court addressed in *Miller*. Indeed, the attorney-fee provision at issue in this case, which the bankruptcy court found to be applicable to *both* reinstatement and Chapter 13 cure, provides for the debtor's payment of attorneys' fees as a condition of invoking contractual or statutory rights to continue the contractual relationship with the creditor.

Contrary to the bankruptcy court's analysis, *Mahaffey* and *Davidson* did not merely create a narrow exception to the general rule of *Miller* that applies only to the limited circumstance of a contractual reinstatement. *See Mahaffey*, 154 Ohio App.3d at 52; *Davidson*, 285 F.Supp. 2d at 1103. Rather, these cases analyzed the proper scope of the "public policy" *Miller* sought to vindicate. In doing so, the cases clarified that the *Miller* rule does not extend to attorney fee provisions, such as reinstatement provisions, which are triggered by some event other than the debtor's default (*e.g.*, as a condition of invoking contractual reinstatement). *See id.* Because the allowance of the Fees in this case is not dependant upon a finding that cure and reinstatement are identical, the bankruptcy court's analysis of the economic distinctions between cure and reinstatement is irrelevant to whether Ohio law prohibits recovery of the Fees in this case. Instead, a correct analysis should focus on whether the allowance of the Fees as part of Chase's Arrearage claim is comparable to a penalty on default or whether the recovery of the Fees in this case is more analogous to the recovery of attorneys' fees as a condition of reinstatement.

19

For the same reasons identified in *Mahaffey* and *Davidson*, recovery of attorneys' fees as a condition of a Chapter 13 cure should be permitted. Importantly, a Chapter 13 cure essentially functions as a reinstatement over time. Regardless of the manner or term of the required repayment, *both* cure and reinstatement allow a borrower to become current on the defaulted loan, and both are intended to reimburse the lender for all fees and expenses incurred as a result of the default. These features of reinstatement and Chapter 13 cure make the parties whole. Although cure allows this payment to be made over time, whereas reinstatement requires a lump sum payment, the result of each is the same: the borrower is allowed to come current on the loan, and the lender is reimbursed for all missed payments, charges, and expenses that were caused by the original default.

Based on these relevant similarities between cure and reinstatement, and for the same reasons set forth in *Mahaffey* and *Davidson*, the better view of Ohio law is that Chase's recovery of the Fees in this case is permitted.

**2.      Ohio's Public Policy does not Prohibit Chase from Recovery of the Fees in the Context of Debtor's Chapter 13 Cure.**

In addition to the relevant similarities between cure and reinstatement that suggest the Ohio Supreme Court would find the recovery of attorneys' fees are permitted in a statutory cure, Ohio's public policy does not suggest that Chase should be prohibited from recovering the Fees as part of its Arrearage Claim in this case. This conclusion is supported by the guiding principles that have driven the development of Ohio's common law related to the allowance or disallowance of attorney fees provisions.

**a.      The Allowance of Attorneys Fees in a Chapter 13 Cure Does Not Encourage Litigation.**

In *Worth*, the Supreme Court explained that the purpose of the prohibition on attorney fee provisions was, at least in part, to disallow the typical attorney fee provisions that encourage

20

"litigation to establish either a breach of the agreement or a default on the obligation." *Worth*, 32 Ohio St. 3d at 242; *see also Miller*, 85 Ohio St. at 192-193 (the prohibition on fee-shifting agreements is "well sustained by the obvious tendency of such contracts to encourage suits."). Applying that underlying principle to this case, the recovery of attorneys' fees in a Chapter 13 cure does nothing to encourage litigation. In fact, the statutory framework of Chapter 13 bankruptcy is specifically designed to **prevent** litigation that would establish a pre-petition default or breach of the terms of a note or mortgage. *See* 11 U.S.C. § 362 (staying all litigation related to pre-petition defaults).

The statutory right to cure provides the debtor an opportunity to cure his defaults over time and avoid foreclosure. *See* 11 U.S.C. § 1322(b). In this case, upon Debtors' Chapter 13 filing, Chase's only remedy against Debtors was through the bankruptcy process. *See* 11 U.S.C. §§ 501 and 502 (establishing procedures for the filing of proofs of claims and allowance of claims or interests, respectively). Any further litigation to establish a breach or default of the Note and Mortgage was stayed under 11 U.S.C. § 362. Thus, because Chase has been stayed from pursuing any litigation in connection with Debtors' default, Ohio's public policy against encouraging litigation would not suggest that the allowance of the Fees as part of Chase's Arrearage Claim in Debtors' Chapter 13 case should be prohibited. The posture of this case is no different than *Mahaffey*, where the debtor sought reinstatement to stop a foreclosure action commenced by the lender and instead pursue an extrajudicial remedy under which the debtor could continue the contractual relationship.

**b.      Chapter 13 Cure is a Mutually Beneficial Remedy.**

In addition, the *Worth* court also drew a distinction between the one-sided attorney fee provisions at issue in *Miller*, which are disfavored under Ohio's public policy, and contract provisions that are mutually beneficial to both parties, which are permitted. *Worth*, 32 Ohio St. 3d at 242.

21

As the Supreme Court noted, "[an indemnification agreement] is not a situation of one-sided attorney fees provision or one of imbalance." *Id.* Rather, the Supreme Court found that an indemnification agreement at issue in that case was mutually beneficial for both parties, and simply allowed the indemnified party to be made whole in the event of a loss. *Id.* Based on this finding, the Supreme Court held that the indemnification agreement did not implicate the policy concerns at issue in *Miller. See id.*

Likewise, a Chapter 13 cure is a mutually beneficial remedy. A cure under § 1322(b)(5) allows a debtor to become current on an obligation, while at the same time allowing the secured creditor or lender to return to its pre-default condition. *See Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26-27 (2nd Cir. 1982) ("Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified."). Accordingly, the inclusion of the Fees in Debtors' Arrearage Claim is part of a mutually beneficial statutory framework that is designed to allow Chase to be made whole, while permitting Debtors to cure their default and continue their contractual relationship with their lender as if no default occurred. Chase is not seeking to enforce the terms of a one-sided attorney fee provision, but has simply filed a claim that would return it to its pre-default condition. Accordingly, the allowance of the Arrearage Claim is not disfavored under Ohio's policy against one-sided attorney fee provisions.

> **c.    It is reasonable to require Debtors to repay the Fees incurred in enforcing the Mortgage, as a condition of the cure under Chapter 13.**

Finally, for the same reasons recovery of attorneys' fees is reasonable in a contractual reinstatement, the allowance of the Fees as part of Chase's Arrearage Claim is a reasonable condition of Debtors' cure. In *Mahaffey*, the Second Appellate District reasoned that, in the context of a contractual reinstatement, "it is reasonable that the mortgagee should require, as a

22

condition of abandoning the foreclosure action and reinstating the loan, that it recover its attorney fees expended in the foreclosure action that it is abandoning." *See Mahaffey*, 154 Ohio App. 3d at 52. Likewise, the Department of Housing and Urban Development and the Department of Veterans Affairs have adopted regulations that provide for the recovery of attorneys' fees as a condition of contractual reinstatement. *See* 24 C.F.R. § 203.608 and 38 C.F.R. § 36.4308(h). These two federal agencies are charged with promoting and protecting residential mortgage lending to veterans and low-income borrowers. Thus, Ohio courts and the federal agencies charged with oversight of residential mortgage lending agree that it is reasonable to condition contractual reinstatement on the payment of attorneys' fees.

In the context of a Chapter 13 cure, a secured creditor is similarly stayed from pursuing state court collection activities and must accept a cure of the debtor's default that is intended to return the parties to their pre-default condition. *See Pierro*, 685 F.2d at 26-27. Because it is accepted in Ohio, and nationwide, that the payment of attorneys' fees may be a reasonable condition of contractual reinstatement, it is just as reasonable to include attorneys' fees in the calculation of the amount necessary to cure under § 1322(b)(5).

In fact, the allowance of attorneys' fees in the context of a Chapter 13 cure is notably less onerous than in the context of a contractual reinstatement, given that a Chapter 13 cure allows the fees to be repaid over a period of up to five years. Because a contractual reinstatement requires a lump sum payment of the entire arrearage amount, borrowers are actually better situated to repay attorneys' fees pursuant to a Chapter 13 plan than they would be if they were required to reinstate under the terms of their mortgage. Thus, it would be a dubious rule of law to allow a lender to condition contractual reinstatement on the lump sum repayment of attorneys' fees, yet prohibit the recovery of the same fees over time in the context of a Chapter 13 cure.

Further, the amount necessary to cure is calculated by the very same provision that provides for contractual reinstatement.  In order to calculate the amount necessary to return the parties to their pre-default conditions in a Chapter 13 cure, courts interpreting § 1322(e) have held that courts must look first to the underlying agreement.  *See In re Lake*, 245 B.R. 282, 285 (Bankr. N.D. Ohio 2000) ("The amount of th[e] cure us determined by looking to two sources: (1) the existing agreement between the parties; and (2) applicable nonbankruptcy law, which in this case is Ohio law.  As a result, '[t]wo conditions must be met before interest or other charges can be require[d] as part of the bankruptcy cure.  First the interest or other charges must be required under the original agreement and second, they cannot be prohibited by state law."); *see also*, Memorandum Opinion, p. 14 (Doc. 1, Ex. 13).

In this case, the only provision in the underlying agreement that contemplates returning the parties to their pre-default position is the reinstatement provision in the Mortgage. *See* Mortgage § 19 (Doc. 1, Ex. 10, Ex. B).  This provision expressly provides that "[u]pon reinstatement by the Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred."  *Id*.  In order to reinstate under the Mortgage, Debtors would be required to pay certain reinstatement sums and expenses, including attorneys' fees incurred in enforcing the Mortgage.  Therefore, under the plain terms of the parties' underlying agreement, Debtors are required to pay all reinstatement sums, including the Fees, in order to cure their default under § 1322(b)(5) and return the parties to their pre-default positions.  *See id.*  Therefore, the Fees must be allowed as part of Chase's Arrearage Claim, unless the Fees are prohibited under Ohio law.  *See In re Lake*, 245 B.R. at 285.

Because the Fees would not have been prohibited if Debtors invoked the contractual reinstatement provision of the Mortgage, there is no sound policy basis to prohibit the recovery

24

of the exact same Fees as a condition of Debtors' Chapter 13 cure. Accordingly, it is unlikely that the Ohio Supreme Court would find Chase's recovery of the Fees in this case to be prohibited by Ohio law. The Fees should therefore be allowed as part of Chase's Arrearage Claim.

In sum, based on the relevant Ohio authority and the principles underlying the development of Ohio's public policy, the Ohio Supreme Court would not find that the recovery of the Fees in connection with Debtors' Chapter 13 is prohibited under Ohio law.

> **F.    The Bankruptcy Court Cases Relied Upon By Judge Hoffman In His Opinion Are Not Persuasive Because Each Incorrectly Applied *Miller V. Kyle* In The Context Of A Chapter 13 Cure.**

In his Memorandum Opinion, Judge Hoffman relied upon several Ohio bankruptcy court opinions to support his conclusion that Chase's recovery of Fees is barred by Ohio common law. *See In re Lake*, 245 B.R. 282 (N.D. Ohio 2000); *In re Petroff*, 2001 Bankr. LEXIS 1594 (6th Cir. BAP 2001); and *In re Landrum*, 267 B.R. 577 (S.D. Ohio 2001). Each of these cases, however, suffers from reliance on the same faulty premise adopted by Judge Hoffman: the courts assumed, without analysis, that the general rule announced in *Miller v. Kyle* extends to the context of a Chapter 13 cure. As previously discussed in detail, *Miller* only bars attorney fee-shifting provisions that essentially operate as a penalty upon default by the borrower. Because none of the bankruptcy court decisions cited by Judge Hoffman appreciated this crucial limitation upon the *Miller* rule, these decisions are neither binding nor persuasive in this case.

> **1.    The Northern District Bankruptcy Court's decision in *In re Lake* improperly expanded the scope of *Miller* and failed to follow the standard set forth by the Sixth Circuit for interpreting state law.**

In *In re Lake*, the Debtor objected to a secured creditor's proof of claim that included attorneys' fees as part of the amount necessary to cure the default. *In re Lake*, 245 B.R. 282 (N.D. Ohio 2000). As stated above, under the Bankruptcy Code, the amount necessary to cure a

default in a Chapter 13 bankruptcy case is determined by looking to two sources: (1) the existing agreement between the parties; and (2) applicable nonbankruptcy law. 11 U.S.C. § 1322(e). In *Lake*, the existing agreement between the parties consisted of the note and mortgage, and the debtor conceded that these documents provided for the payment of attorney fees in a Chapter 13 cure. *In re Lake*, 245 B.R. at 284. The court then looked to Ohio law to determine whether the attorneys fees were prohibited by applicable "nonbankruptcy law." *Id*. at 285. In reaching her conclusion, Judge Morgenstern-Clarren found, without discussion, that *Miller v. Kyle* was applicable in the context of a Chapter 13 cure. Therefore, the court held that the recovery of attorneys' fees in a Chapter 13 cure was prohibited by Ohio's public policy. *Id*. at 286-287.

However, in applying *Miller v. Kyle* to the facts of that case, Judge Morgenstern-Clarren improperly expanded the scope of *Miller* to apply to the question of whether attorney fees could be included in the amount necessary to cure a default in a Chapter 13 bankruptcy. For the reasons set forth herein, the scope of *Miller* is limited to attorney fee provisions that are payable on default as a penalty to the borrower. In fact, on its plain terms, the syllabus rule of law in *Miller v. Kyle* states: "It is the settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void." *Miller*, 85 Ohio St. 186 at syllabus. Nonetheless, the court in *Lake* inexplicably read the general rule of *Miller* to apply to all attorney fee provisions, whether triggered on default or not. *In re Lake*, 245 B.R. at 286. Because *Miller v. Kyle* is not applicable in determining whether attorneys' fees may be recovered in the context of a Chapter 13 cure, the bankruptcy court in *Lake* erred in holding that the secured creditor was prohibited from recovering the attorneys' fees allowed under the terms of the note

26

and mortgage under Ohio law. *In re Lake* therefore provides weak support for the bankruptcy court's decision in this case.

        2.      **The Bankruptcy Appellate Panel also failed to follow the standard for interpreting state law and incorrectly broadened the Ohio Supreme Court's ruling in *Miller*.**

The bankruptcy court's reliance on *In re Petroff* is also misplaced. The lender's proof of claim in *In re Petroff* included $975 of attorney fees the lender incurred in a foreclosure action prior to the filing of the debtor's Chapter 13 bankruptcy petition. *Id.* at 2-3. The debtor in that case objected to the inclusion of these fees in the lender's proof of claim. *Id.* On appeal from the bankruptcy court's decision, the Bankruptcy Appellate Panel ("BAP"), in an unreported decision, misinterpreted *Miller v. Kyle* to stand for a common law rule in Ohio that "renders illegal a contract provision in an ordinary note or debt instrument for the payment of attorney fees to the lender." *Id.* at 4. On its face, this statement of law improperly broadens the decision in *Miller*, which is limited to attorney fee provisions that serve as penalties on default. *See Miller*, 85 Ohio St. at 192-93; *see also Worth*, 32 Ohio St. 3d at 242.

In an effort to provide support for their flawed conclusion, the BAP cited to *Leavans v. Ohio Nat'l Bank*, 50 Ohio St. 591 (1893) as additional support for its holding that attorney fee provisions in mortgages are prohibited by Ohio's public policy. But rather than provide additional support for the BAP's decision, the *Leavans* case actually clarifies that *Miller* and *Leavens* are not applicable in the context of a Chapter 13 cure. *Leavans* stands for the proposition that attorney fees cannot be included in a foreclosure sale and paid out of sale proceeds. In a Chapter 13 cure, there is no foreclosure and there is no distribution of sale proceeds. Instead, the debtor elects to avoid foreclosure and pays the amount necessary to return the parties to their pre-default position. This payment is made over a three to five year plan period, and the parties then continue their relationship under the terms of the note and mortgage

27

as if the default never occurred. This situation is wholly unrelated to a foreclosure sale, in which the sale of the property is forced upon the borrower and attorney fees are then deducted from the sale proceeds.

The BAP also focused too much on the issue of whether the note and/or mortgage was a "contract of adhesion" and failed to analyze whether *Miller* applies when the obligation to pay attorneys fees is not triggered as a penalty on default. In reaching its decision, the BAP acknowledged the Ohio Supreme Court's decision in *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St. 3d 32, 514 N.E.2d 702 (Ohio 1987), in which the Supreme Court upheld an attorney fee provision in an agreement between a condominium owner and the owners' association. However, in distinguishing *Nottingdale* from a case involving an "ordinary" note and mortgage between an individual and a lender, the BAP relied on a line of cases prohibiting the recovery of attorneys' fees in the commercial context. *See First Capital Corp. v. G & J Indust., Inc.*, 131 Ohio App. 3d 106 (8th App. Dist. 1999).

This mode of analysis employed by the BAP is flawed for two reasons. As an initial matter, these commercial cases involving default-based attorney fee provisions were irrelevant to the issue before the BAP. The question of whether attorneys' fees may be recovered by a residential lender in a Chapter 13 cure is unaffected by whether a commercial lender or lessor may recover attorneys' fees upon default of a commercial agreement. Further, *First Capital* was expressly superseded by the enactment of O.R.C. § 1301.21. *See New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213 (S.D. Ohio 2001). Thus, *First Capital* was not even relevant to the issue of commercial fee agreements when the BAP issued its decision. Therefore, the BAP rationale for extending the rule of law set forth in *Miller* to a Chapter 13 cure is flawed and unpersuasive.

Although the *Petroff* court used slightly different reasoning and distinguished newer case law than the *Lake* court, the BAP also failed to follow the precedent for federal courts interpreting state law set forth by the Sixth Circuit. *See CIT*, *supra*. The failure to properly apply Ohio law to its facts demonstrates that the *Petroff* decision is flawed for the same reasons the *Lake* decision was wrongly decided, despite the fact that the analysis to reach that point was slightly different.

   3.     **The Bankruptcy Court's rationale in *In re Landrum* is flawed in finding that attorney fee provision in a note and mortgage are void based on the syllabus rule of law in *Miller v. Kyle*.**

The Bankruptcy Court for the Southern District of Ohio visited the issue of allowance of attorney fees in a Chapter 13 cure in *In re Landrum*. In *Landrum*, the lender included attorney fees in its proof of claim as provided under the agreement of the parties when a Chapter 13 debtor elected to cure the default pursuant to § 1322(b)(5). *In re Landrum*, 267 B.R. 577, 578-579 (S.D. Ohio 2001). The debtor objected to the lender's inclusion of its attorney fee in the proof of claim. *Id*. at 579. In its analysis of applicable nonbankruptcy law under 11 U.S.C. §1322 to calculate the amount necessary to cure the debtor's default, the *Landrum* court again cited the syllabus rule in *Miller* and the BAP's decision in *Petroff* as further support that *Miller* applies to prohibit attorney fees provisions set forth in residential mortgages. *Id*. at 582.

In an effort to save its arrearage claim, the lender argued that *Miller* is inapplicable where the debtor chooses to reinstate (or cure) the mortgage. *Id*. at 581. The bankruptcy court rejected this argument based on *Miller's* use of the term "void" in its syllabus rule of law. The court reasoned as follows: "To argue that *Miller* voids fee stipulations only when a mortgage is foreclosed creates an inherent contradiction. If a stipulation is void, it is ineffective from inception no matter what happens thereafter." *Id*. at 582. Accordingly, the court held that

attorney fees provisions are void and can never be invoked, whether upon foreclosure, reinstatement, or cure.

*Landrum*'s reasoning misstates the scope of *Miller*. Although *Miller* may prohibit certain attorney fee provisions set forth in mortgages, it does not bar every provision in a mortgage that provides for payment of attorneys' fees. Only those default-based fee provisions that implicate the public-policy concerns addressed by *Miller* (*i.e.*, encouragement of litigation, penalty upon the borrower) could be void. In contrast, provisions that condition reinstatement or cure upon payment of attorney's fees do not implicate these public policy concerns and should therefore remain intact as a matter of Ohio law.

In a Chapter 13 cure, the amount necessary to cure a debtor's default is calculated based on the reinstatement provision of the mortgage, which stipulates the fees, charges, and expenses that are required to return the parties to their pre-default conditions. *See* Memorandum Opinion, at pp. 7, 15 (citing the reinstatement paragraph of the Mortgage as the contractual provision describing the amount to be paid by Debtors in a Chapter 13 cure). Because a reinstatement provision does not obligate the debtor to pay the attorneys' fees as a penalty on default, the public policy cited by *Miller* is not at issue. The *Landrum* court's reliance upon *Miller* is therefore analytically unsound. Accordingly, the bankruptcy court in this case committed reversible error by relying upon *Landrum* for the proposition that Ohio law prohibits a lender from recovering attorneys' fees in the context of a Chapter 13 cure.

## VII. CONCLUSION

For the foregoing reasons, Chase respectfully requests that this Court reverse the decision of the bankruptcy court, which found that Appellant was prohibited under Ohio law from recovering the Fees in the context of Debtors' Chapter 13 cure. The bankruptcy court's decision relies on the flawed premise that *Miller v. Kyle* is the applicable "nonbankruptcy law" to be

applied in determining the amount necessary to cure a default under 11 U.S.C. § 1322(e). As a matter of law, Ohio public policy is not offended by a contractual agreement by the debtor to pay the creditor's attorneys' fees as a condition of curing a default under Chapter 13. Accordingly, this Court should reverse the judgment of the bankruptcy court and enter an order overruling Debtors' objection to the allowance of the Fees in this case.

Respectfully submitted,


/s/ Justin W. Ristau
Kenneth C. Johnson       (0022021)
Justin W. Ristau         (0075222)
Rachel Ary Mulchaey      (0073669)
Vladimir P. Belo         (0071334)
BRICKER & ECKLER LLP
100 S. Third Street
Columbus, Ohio 43215
Telephone: 614/227-2300
Fax: 614/227-2390
kjohnson@bricker.com
jristau@bricker.com
rmulchaey@bricker.com
vbelo@bricker.com

Co-counsel for Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation

31

1497838v4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of March, 2006, a copy of the foregoing BRIEF OF APPELLANT CHASE HOME FINANCE LLC, SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION was filed electronically.  The following parties will be served on this day either via operation of the Court's electronic filing system or via ordinary mail service, as indicated below.  Parties may access this filing through the Court's system.

**Via Electronic Service:**

       Chapter 13 Trustee
       U.S. Trustee

**Via Regular Mail Service:**

       Paul Allen Tudor, Debtors
       8181 York Road
       Pataskala, Ohio  43062

       Todd G. Finneran, attorney for Debtors
       380 Fifth Street, Suite 4
       Columbus, Ohio  43215

       Rick D. DeBlasis
       P.O. Box 5480
       Cincinnati, Ohio  45201

                         /s/ Justin W. Ristau _____
                         Justin W. Ristau

32

1497838v4